The first is cause number 22-10544, United States of America v. Jeremy Glenn Powell. Is the appellant ready to proceed? Yes, Your Honor, Jessica Groffer, appellant, Jeremy Powell. You may proceed. Thank you. May it please the Court. Your Honors, this case is about a straightforward application of the Supreme Court's definition of threat to the elements of a statute. When the Texas legislature defined the offense of robbery as threatening or placing another in fear of imminent bodily injury, it meant for those two terms to have distinct meanings. Placing in fear does not require a communicated threat, and under United States v. Taylor, cannot qualify as a violent felony. There are three reasons why this Court should reverse and remand to the District Court. First, in Taylor, the Supreme Court overruled this Court's decision in United States v. Garrett when it held that the term threat within the force clause requires a communicated threat. Second, Texas courts are clear. Placing in fear does not require a communicated threat. And third, because United States v. Sozeby did not hold that Garrett stands despite Taylor, this Court isn't bound under the rule of orderliness. Turning to my first point, Taylor overruled Garrett because it established a rule inconsistent with that precedent. The government argues that Taylor is irrelevant to the Court today, claiming that when the Supreme Court interpreted the term threat within Section 924C's force clause, that holding was somehow limited to the offense of attempted Hobbs Act robbery.  In Gagagan v. U.S. Citizenship and Immigration Services, this Court explained that the dominant consideration in determining whether the Supreme Court has implicitly overruled this Court's precedent is the similarity of the issues decided. In that case, this Court held that the Supreme Court had implicitly overruled its precedent when both courts were interpreting the term attorney within two different statutes concerning attorney's fees. Now Taylor was interpreting the term threat within Section 924C's force clause, and that force clause is practically identical to the one before the Court today in the ACCA. The only difference is that Section 924C's is actually slightly broader because it applies to force against both the person and property, whereas the ACCA only applies to force against the person. The same statutory language should almost always have the same meaning. The government is attempting to limit the Supreme Court's authority to say what the law is, but Taylor is not so narrow, and the Sixth Circuit recognized this much in Martin when it said that Taylor explains how courts should conduct a force clause analysis. There is no reason why the term threat in Section 924C's force clause should mean anything different than the term threat in the ACCA. So the question for the Court now is, is Garrett inconsistent with Taylor? And the answer is yes. Taylor held that a threat means a communicated intent to cause harm, and the Court there pointed to multiple definitions of the word threat, all requiring an intentional communication of an intent to do harm. And the Court explained that it is a specific act against another person. So Taylor made clear that the force clause does not include the term threat in every possible sense of the word. It's a more narrow definition. But Garrett held that Texas robbery, which unquestionably does not require as an element a communicated threat, qualifies as a violent felony, and those rulings simply can't be squared. Moving to my second point, under binding Texas law— Correct? Correct, Your Honor. That was the offense underlying that case. That's different from what we have here, isn't it? The offense is different, but the analysis is the same. What Taylor was doing was defining the term threat generally within Section 924C's force clause. And there's nothing indicating that that would be limited to the offense of attempted Hobbs Act robbery. The term threat would apply universally. And because the ACCA uses the same term in the same way, the court's holding in Taylor applies to there as well. Now, Texas courts are clear that placing in fear does not require a communicated threat. Taylor explicitly rejected that conduct which poses a threat qualifies, but that's exactly what the Texas robbery statute does. It criminalizes both communicated threats and conduct that poses a threat. The government has argued that placing in fear simply means a nonverbal threat, but that's not accurate. And we can see that because Texas courts have repeatedly said that the robbery statute is intentionally broader than the Texas assault statute and intentionally encompasses more than just threats. A person can certainly commit the offense of Texas assault with a nonverbal threat. But robbery is meant to be different. It's not just assault plus theft. And courts have described the difference as placing in fear is a passive component in That difference is very clear in Texas Court of Criminal Appeals' binding precedent, holding that robbery does not require a communicated threat, whether verbal or nonverbal. In Howard v. State, the question presented was whether robbery requires interaction between the defendant and the victim. And the answer is no. It was enough that the defendant knew that entering a store with a gun was reasonably likely to scare someone, and the store clerk was scared. It didn't matter that the defendant never interacted with the store clerk. It didn't matter that the defendant didn't even know the store clerk was there. But you can't threaten someone if you don't know that they're there. Howard is extremely similar to Justice Gorsuch's hypothetical in Taylor. While entering a store with a mask and a threatening note is objectively scary behavior, it's not a crime of violence because no threat was ever made. I think it's also important that Howard pointed to long-standing CCA precedent interpreting robbery very broadly. The court there pointed to Rayford v. State, which was dealing with the Texas robbery statute's prior iteration, which also had placing in fear as a way to commit the offense. Now in Rayford, a woman inside a store saw her husband out in the parking lot get shot. She ran out to help him, put down her purse, without her noticing the purse was stolen. The dissent in Rayford argued, this isn't robbery. This woman was never threatened. She never interacted with the defendant. She didn't even see her purse get stolen. And the majority said, it doesn't matter. There doesn't have to be a threat. It was enough that the defendant's conduct scared her and her purse was stolen. So binding Texas authority makes it clear that robbery by placing in fear does not require a communicated threat as an element. It's intentionally broader than that. And under Taylor, it cannot be a violent felony. Turning to my third point, this court is not bound by Sosebee and Wheeler because those decisions did not analyze whether Taylor overruled Garrett. The government argues that the court's hands are tied here, but neither of those opinions actually answered the question presented, did Taylor overrule Garrett? And this court has interpreted the rule of orderliness narrowly. If a prior opinion did not squarely address or grapple with an issue, the court is not bound. And the court affirmed that reasoning just recently in Ochoa Salgado versus Garland, when the court says it looks to whether a party raised an issue and did the prior panel give that issue reasoned consideration. That didn't happen in Sosebee or Wheeler. First, of course, Wheeler is unpublished, but I think it's really important to note that neither party ever cited Garrett, not in the initial briefs, not in the 28Js. Now, in one 28J letter, the defendant did argue that Taylor overruled United States versus Lerma, which was a question about the divisibility of the aggravators for Texas aggravated robbery. But nobody ever discussed Garrett at all. Of course, it did come out in the opinion, but that wasn't an argument presented by the parties. So this court cannot be bound by a decision where the argument wasn't raised or considered. Now, the defendant in Sosebee did argue that Taylor overruled Garrett in a 28J letter, but this court did not give that argument reasoned consideration. And we can see that first by looking to the fact that the Sosebee opinion did not discuss or even cite Taylor. Instead, it cited other panel opinions which had described Garrett as binding. But it's really important to note that those cases didn't discuss Taylor either. They simply held that robbery by threat qualifies as a violent felony after Borden because it cannot be committed recklessly. Your argument depend on the fact that, depend on whether detection of robbery by threat requires a communicated threat? Yes, it does. Okay. So that if, in fact, a detection of robbery, there is a requirement of a communicated threat, then your argument can't stand? That's correct, Your Honor. And I think we can see from multiple cases that Texas robbery just doesn't require a communicated threat. I would also point the court to the Court of Criminal Appeals decision in Olivas v. State, where the court was considering the definition of the term threat within the assault statute and specifically said that whatever a threat is, it's not placing another person in fear because the assault statute has to be different from the robbery statute. So the plain language of the statute here is demonstrating that there must be something different. And we can see that it's different when it's applied to the facts of cases by the CCA, where convictions are upheld when no threat or even interaction occurred. Now, this court never held in United States v. Sozobe that Taylor didn't overrule Garrett. Beyond the fact that the opinion never cited Garrett or never cited Taylor at all, we can also look to what the opinion actually said about the party's arguments in that case. It doesn't say that the defendant argued Garrett was overruled by Taylor or anything else. It says that the defendant took issue with the reasoning and Garrett. But the panel held that those arguments were irrelevant because Garrett is still binding authority. And the language in the opinion makes sense when you look at the actual briefing in the case. The defendant there argued that Garrett conflicted with this court's prior precedent on the issue of divisibility, whether robbery can be split between robbery by injury and robbery by threats. And therefore, the defendant argued that Garrett didn't control. The prior precedent would have controlled. In rejecting that argument, the panel directly quoted the government's response brief, which was submitted before Taylor was handed down. The vast majority of the Sozobe opinion was actually about divisibility and also a separate question of whether a 2255 is mooted when the defendant has completed the entirety of the sentence. So there is simply no evidence that Sozobe gave reason consideration. And because of that, this court is not bound under the rule of orderliness. And it should hold in the first instance that Taylor overruled Garrett when it issued an opinion inconsistent with that precedent. If there are no further questions, I would ask that the court reverse and remand to the district court. All right. Thank you, counsel. Mr. Gilstrap. Thank you, Judge Graves, and may it please the court. Stephen Gilstrap on behalf of the United States. I'd like to emphasize three points at the outset. First, under United States versus Garrett, a Texas robbery by threat conviction is a violent felony. Second, Garrett remains binding after Taylor. And third, even without Garrett's binding nature, the Texas robbery by threat statute requires as an element the threatened use of force consistent with Taylor. To dig in on the second point, that Garrett remains binding after Taylor. That is true for at least two reasons. The first is that this court has reaffirmed both in published and unpublished decisions that Garrett remains binding in the face of the exact argument that is being made here, that Taylor somehow, implicitly or otherwise, overrules Garrett. And this argument, as I heard Ms. Graff concede in her opening, was presented in 28Js, whether it was specific to Garrett or in Wheeler, whether it was focused on Lerma or the aggravated version of the Texas robbery by threat statute. But in both cases, the defendant argued that Taylor overrules something about the Texas robbery by threat statute, that it can be a violent felony. And while it is true that neither case cited Taylor, when we look at what those courts said, it becomes clear that they grappled with the issue. Take Sosby. The court recognized that, quote, Sosby takes issue with Garrett's reasoning, but confirmed that Garrett remained binding in the absence of, quote, an intervening contrary or superseding decision from the Supreme Court or the en banc court, which it said, quote, neither of which has occurred. That argument was presented in a 28J and in a published decision in U.S. versus Sosby, this court said neither of those things had occurred. Let's take Wheeler. The court said that Wheeler devotes much of his appellate briefing trying to convince us otherwise, but we agree with and are bound by Garrett's reasoning. Although neither case cited Taylor specifically, the language in each case confirms that the court considered and rejected the very argument that is being made here based on United States versus Taylor. And if this court wasn't going to consider an argument that was before it, it would have said so, like it did in both Wheeler and Sosby, that it wasn't considering a belated argument that had been raised based on Wooden. And so based on the language in these opinions, the government believes that this issue was considered and it was rejected, and thus this court is bound under the rule of orderliness. But the second reason that Garrett remains binding is that nothing in Taylor comes close to the standard this court has for overruling its prior precedent. Indeed, in Alcantar, this court said that the overruling must be unequivocally directed by the new Supreme Court precedent, not merely illuminating or a mere hint that the Supreme Court might rule some way in the future. And in fact, the government is not aware of any court holding that under Taylor, a previous violent felony, with the exception of attempted Hobbs Act robbery, which was the statute involved in Taylor, no longer qualifies as a violent felony. And Powell has not cited any case or any appellate case where the court has said, whoa, now under Taylor, we have to reconsider the whole ballgame here because Taylor changes the analysis in some way, shape, or form. In fact, in the Martin case that Ms. Graff cited, the Sixth Circuit, I believe, specifically said that Taylor wasn't a game changer in this regard. And when you look at the analysis in Taylor, what is being recognized is that in a Hobbs Act robbery, you can commit a Hobbs Act robbery by threatening the use of force. And so Taylor recognizes that an attempted Hobbs Act robbery can be completed by attempting to threaten force. Here, we have a Texas completed robbery by threat. It's not an attempt to threaten. It is a threat. It is the threatened use of force. And so what the Martin case, which was cited in the 28J correspondence in this case is making clear, that case dealt with an attempted Tennessee murder statute. And the court is recognizing that attempted Tennessee murder requires the use of force. So attempting a Tennessee murder requires the attempted use of force, which still falls within the statute. What Taylor was dealing with is where the crime can be committed with the threatened use of force. Attempting to threaten doesn't count. But it doesn't call into question this court's opinion in Garrett, because the Texas robbery by threat statute requires the threatened use of force. At the end of the day, we're dealing with a completed crime here, not an attempted crime. And in fact, the argument that's being advanced here based on Taylor is really similar to the argument that this court rejected in Garrett, which was based on the Supreme Court's decision in Borden. In fact, in the supplemental briefing in Garrett, that defendant cited the same cases, Williams v. State, Cooper v. State, Howard v. State, and Burgess v. State, to argue that robbery by placing another in fear does not require threat at all. And this court in Garrett rejected that argument after Borden, and Taylor doesn't change the game in that regard. And so the government's first position is that Garrett remains binding after Taylor and forecloses this argument. But even without Garrett's binding nature, a close look at Taylor confirms why it doesn't undermine Garrett at all. As I've already mentioned, Taylor dealt with an attempted Hobbs Act robbery. Here we have a completed Texas robbery by threat. And the difference between attempting to threaten in the Taylor context is very different than what the Texas robbery by threat statute requires, which is intentionally or knowingly threatening or placing another in fear of imminent bodily injury or death. And one other point I think is worth emphasizing here. None of Powell's state court cases suggests that a defendant can be convicted under the unless he actually threatens someone or takes some action that places an individual in fear of imminent bodily injury or death. Indeed, in all of the cases that Powell cites, the defendant threatened another verbally or nonverbally or took an action that was perceived by the victim to be an implicit or an implied threat. The argument that the Texas robbery by threat statute doesn't require a threat is incorrect. And when we look at those Texas cases, it confirms why. Let's take Williams v. State. There is language in there suggesting that you can violate the Texas robbery by threat statute without a, quote, actual threat. But when you read further in that case, it's clear what the court is saying when it uses the term actual threat. It's... Judge Keller wrote in a Cooper opinion separately. But that case makes the same point. In Cooper, in Judge Keller in her concurring opinion, contrasted an actual threat with the two following scenarios. First, giving a store clerk a menacing look while having a holstered gun and demanding money. So what is being said in that case is that's not an actual threat because you're not saying something to the effect of your money or your life. But you're walking up to the store clerk armed with a holstered gun and saying, give me all your money with a menacing look. What the courts in Texas would call that is an implicit or an implied threat. And that's what the language in the Texas robbery by threat statute, placing in fear of imminent bodily injury or death, is doing. And I think the Howard v. State case, which was referenced where the store clerk saw the covered face wielding a rifle and hides in some place in the store and his wallet's stolen, that's the case that the court actually looks at what this language is doing. And it looks at the model penal code and cites it. And it notes that some state statutes just have the threatened language, not the placing in fear. And the commentary notes that those statutes are adequate, quote, so long as the term as well as explicit threats. But then it says in the commentary to the model penal code what the placing in fear language does in the statute. And it says, quote, it's designed to reach all forms of express or implied threats. So when you look at each of these Texas cases, be it Cooper, be it Howard, be it Williams, be it Jackson v. State is another good example. Because in that case, the court says the place in fear language, quote, is meant to include menacing or other implied threats sought to be communicated to the victim by the actor's conduct. In all of these cases, in case after case, what the Texas courts are making clear is a threat under the statute they're talking about verbal, express, explicit threats. What the placing in fear language is making sure is that the implied threat, the walking up to the store clerk with a holstered weapon saying, give me all your money, that is communicating a threat regardless of whether it is express or explicit as your money or your life. And the Olivas case really confirms this point because it notes in comparing the robbery by threat statute to the assault statute is that to be placed in fear, the victim must receive or perceive the threat. It's hard to imagine how someone's going to be placed in fear if there's no communication, whether that communication is verbal, nonverbal, explicit, implicit. So the suggestion that these Texas cases unequivocally hold that placing someone in fear of imminent bodily injury or death does not require a threat is just not accurate when you look at these cases and they confirm that what that place in fear language is doing is ensuring that the statute covers implied, implicit, nonverbal threats. But at the end of the day, the Texas robbery by threat statute still requires a threat. If this court has no further questions, the government would respectfully ask that it affirm, both because it remains bound by this court's decision in Garrett as confirmed by to undermine those decisions. Thank you, Your Honors. Thank you, Counsel. Rebuttal. Your Honors, two points on rebuttal. First, on the question of whether Garrett remains binding after Sozeby and Wheeler, the government argues that the court must have grappled with the issue in that case because it stated that there hadn't been an intervening Supreme Court decision that overruled Garrett. However, the government is asking this court now to make several presumptions. One, that those prior courts considered an argument raised in a 28J letter when it didn't have to, that it considered an argument that wasn't briefed, and then it gave reasoned or citation. Instead, parties and courts would have to go back and look at every 28J letter that was filed and then make presumptions as to whether the court answered that question when the opinion itself doesn't say that the court did. That is not in line with this court's interpretation of the rule of orderliness because it just doesn't provide any reasoned explanation that would give later panels or parties an answer to whether their question has already been analyzed by the court. And while Sozeby did state that it didn't consider a late-raised wooden argument raised by the defendant in that case, the defendant had moved for permission to file supplemental briefing on the wooden question. He had not done so on the Taylor question. So this court specifically declined to grant supplemental briefing on that late-raised issue, but it has no bearing on whether the court gave reasoned analysis to whether Taylor overruled Garrett. As to the government's point that Taylor just didn't change the analysis, the Sixth Circuit in Martins has said that Taylor wasn't a game changer. It's important to note that when the Sixth Circuit said that, the defendant had argued that Taylor meant that all in code offenses could not qualify as crimes of violence. And the Sixth Circuit said, no, it didn't go that far. What Taylor did was tell us how to apply the elements clause. And I think it's very clear that Taylor does have a broader implication. And we can look at exactly what the government argued in Taylor, that the term threat has a special meaning within Section 924C. Not that it has a special meaning within attempted Hobbs Act robbery. They were applying that argument broadly to the force clause of that statute. And there is no reason why threat should be interpreted any differently to the ACCA or why the Taylor's decision should be limited to attempt crimes. While Taylor may not be a game changer in every case, it is in this one. Now, turning to whether Texas robbery by fear requires a communicated threat, the government says that all of the state court cases show an action that was an implicit threat. So then the court has to ask, well, what is an implicit threat? And the CCA makes clear, it's not a communicated one. In Howard, the court specifically stated, there doesn't even have to be interaction between the defendant and the victim. So how can there be a communication if there is literally zero interaction? And the government says in response to that, that Howard was making the difference between, or showing the difference between a threat that is verbal and nonverbal. I don't understand what you mean by no interaction. The CCA in that case said that there was no interaction because the defendant went into the store. The store clerk was in a back room, saw what was happening on a security monitor, and didn't come out. So the defendant never knew that the store clerk was there. And they didn't interact at all. That's not interaction. The clerk looks out there and sees someone with a gun and doesn't go out? Well, the CCA said it was not interaction. Their specific question presented was, does there have to be interaction? And the answer is no. I think a common sense notion would be that if I'm in the back room and somebody's looking out there and says, oh, I've got a gun, I don't answer what's going on. I'm not going out there. That's not interaction in the sense that they point the gun at me. But if I move, they certainly place me in fear. Do you agree with that? Right. And that's why the conviction was upheld, because it did place the person in fear. And it's certainly, I would think, reasonable that you wouldn't go out there if you saw somebody with a gun. But what the CCA said was, it doesn't matter that the defendant never communicated with the victim, because that is a different aspect of the statute, making a threat versus placing someone in fear. And the government says that the difference here is a verbal versus a nonverbal threat. But that fails to account for the fact that the assault statute, which only lists commission by a threat, allows both verbal and nonverbal conduct to qualify. So placing in fear has to mean something different. And under Taylor's definition, that means an intentional communication of an intent to do harm. So I'd ask this Court to reverse and remand. Thank you, Counsel. The Court will take this matter under advice.